## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERNESTO PAGAN, | ) | 3:22-CV-00001 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COLON, et al., | ) | |
| *Defendants*. | ) | FEBRUARY 16, 2022 |

### INITIAL REVIEW ORDER

Kari A. Dooley, United States District Judge

Plaintiff, Ernesto Pagan ("Pagan"), a sentenced prisoner currently incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, brings this civil rights action pursuant to 42 U.S.C. § 1983 against defendants, Captain Colon, Warden Guadelarama, Counselor Suarez, Correctional Officer Hawes, Lieutenant Suess, Doe 1, Doe 2, Doe 3, Inmate Smith, Gary Bozzett, John St. Pierre, and Lieutenant Therian.[1] Pagan alleges that correctional staff defendants were deliberately indifferent to his safety and failed to protect him from harm caused by the inmate defendants, and that defendant Officer Hawes improperly classified much of his personal property as contraband and confiscated it. He also includes several state law claims. The correctional staff defendants are named in their individual and official capacities.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In reviewing a *pro se* complaint, the Court must assume the truth of

---

[1] Defendants Smith, Bozzett, and St. Pierre are inmates. The remaining defendants are correctional staff.

the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

During the relevant events, Pagan was incarcerated at Osborne Correctional Institution ("Osborne"). Pagan is an older inmate of "diminutive physical condition" with many health issues that place him at risk of abuse by others. Doc. No. 1 ¶ 16. In addition, he was convicted of sexual assault of a minor. *Id.* ¶ 17. Correctional officers are trained to know that inmates convicted of sexual assault of a minor are at greater risk of physical and sexual assault by other inmates. *Id.* ¶ 18.

In the days prior to December 25, 2020, defendants Doe 1, Doe 2, and Doe 3 were working alternate shifts in the J-1 housing unit at Osborn. *Id.* ¶ 14. Defendants Does 1–3, Captain Colon, Counselor Suarez, Lieutenant Suess, and Warden Guadelarama knew Pagan was convicted of sexual assault of a minor and required greater protection to prevent harm by other inmates. *Id.* ¶ 19.

The J-1 housing unit is an open dormitory where between six and eight inmates are housed in a cubicle. *Id.* ¶ 22. Inmates remain out of the cubicles for most of the day sharing common areas

2

and bathrooms with the inmates in the unit. *Id.* In the days prior to December 25, 2020, other inmates, including defendants Smith, St. Pierre, and Bozzett, learned of Pagan's criminal charges. *Id.* ¶ 23. They harassed, ridiculed, and threatened Pagan in front of other inmates and staff. *Id.* Defendants Does 1–3, Captain Colon, and Counselor Suarez witnessed inmates harassing Pagan but did nothing. *Id.* ¶ 24. Inmate St. Pierre engineered most of the harassment, repeatedly yelling obscene remarks at Pagan and threatening to "get someone to 'f—k' him up." *Id.* ¶ 25.

On December 25, 2020, inmate Smith entered the communal bathroom in the housing unit while Pagan was urinating. *Id.* ¶ 26. Inmate Smith approached Pagan, said, "you like to have sex with little girls," and grabbed Pagan's penis. *Id.* ¶ 27. Pagan pushed inmate Smith away and left the bathroom. *Id.* ¶ 28. Fearful of inmate Smith, Pagan did not report the incident. *Id.* ¶ 29.

On December 26, 2020, inmate Smith again approached Pagan in the bathroom. *Id.* ¶ 30. Inmate Smith grabbed Pagan's penis with one hand and his buttocks with the other. *Id.* Pagan struggled with inmate Smith and was able to get away without significant physical injury. *Id.* ¶ 31. Still fearful, again, Pagan did not report the incident. *Id.* ¶ 32. Pagan alleges that defendants Doe 1-3, Captain Colon, and Counselor Suarez did not properly monitor the bathroom to prevent the incidents. *Id.* ¶¶ 29, 32.

On December 28, 2020, inmate Smith approached Pagan as Pagan was waiting to get his medication. *Id.* ¶ 33. Inmate Smith called Pagan a snitch and began punching him. *Id.* By the time staff intervened, Pagan's injuries required transport by ambulance to the hospital. *Id.* ¶ 34. On route to the hospital, Pagan reported the multiple assaults by inmate Smith to defendant Lieutenant Therian and said he believed that inmate St. Pierre had orchestrated the attacks. *Id.*

Pagan lost consciousness for three days. *Id.* ¶ 36. He required surgery to correct damage to three vertebrae and now must use a walker. *Id.* He also suffered various contusions to his face, torso, and arms and a lump on his head from hitting the floor. *Id.* Pagan now suffers severe migraine headaches, shooting pain in his arms and legs, as well as depression and anxiety. *Id.*

When he was taken to the hospital, staff packed his property and put it in storage. *Id.* ¶ 41. On December 29, 2020, defendant Officer Hawes inventoried Pagan's property and falsely classified nearly all of Pagan's personal electronics as contraband and in excess of his property matrix. *Id.* ¶ 42. He also destroyed or discarded two boxes of Pagan's legal work. *Id.* All the discarded property properly belonged to Pagan and had been returned to him after a prior hospitalization in March 2020. *Id.* ¶¶ 43–44.

Pagan believes that defendant Officer Hawes acted to punish him for his criminal charges and for pressing charges against inmate Smith because defendant Officer Hawes told Pagan that he "hates 'rippers' who press charges against black inmates." *Id.* ¶ 45. Pagan complained to defendants Counselor Suarez, Captain Colon, and Warden Guadelarama and asked each of them to intercede to protect his property but no one intervened on his behalf. *Id.* ¶ 46.

Although Pagan had complained to defendant Lieutenant Therian that inmate St. Pierre had orchestrated the attack and that the inmates in the housing unit knew his criminal charges, Pagan was returned to the same housing unit upon his release from the hospital. *Id.* ¶ 52. Inmates St. Pierre and Bozzett immediately began taunting, harassing, and ridiculing Pagan. *Id.* ¶ 53. Defendants Does 1–3, Captain Colon, and Counselor Suarez did nothing. *Id.*

On February 28, 2021, inmates St. Pierre and Bozzett trapped Pagan in the bathroom. *Id.* ¶ 54. Inmate Bozzett grabbed Pagan's arms and pinned them behind Pagan's back. *Id.* ¶ 55. Inmate

4

St. Pierre snapped the head off a toothbrush and said, "since Smith didn't do a good enough job I'll just do it myself." *Id.* ¶ 56. Inmate St. Pierre pulled down Pagan's pants and repeatedly jammed the toothbrush handle into his rectum. *Id.* ¶ 57. When Pagan managed to wriggle away, he was humiliated, sore, and bleeding slightly from his rectum. *Id.* ¶ 58. Pagan went to his bunk and remained there for the rest of the day. *Id.* ¶ 59. Pagan did not immediately report the incident; he waited until he felt safe doing so. *Id.* ¶ 60. Pagan was transferred to a different facility on April 21, 2021. *Id.* ¶ 61.

**Discussion**

Pagan contends that the correctional staff defendants were deliberately indifference to the threat to his safety posed by inmate defendants Smith, St. Pierre, and Bozzett in violation of the Eighth Amendment of the United States Constitution.[2] He also asserts a state law claim for assault and battery against inmate Smith. Pagan further claims that defendant Officer Hawes deprived him of his personal property in violation of the Fourteenth Amendment of the United States Constitution and did so in retaliation for Pagan pressing charges against a black inmate in violation of the First Amendment of the United States Constitution. Pagan also characterizes these claims as violation of Article first, §§ 1, 4, 5, 10, 11, 14, and 20 of the Connecticut Constitution. *Id.* ¶ 50. Finally, Pagan asserts a claim for sexual assault and battery against inmate defendants St. Pierre and Bozzett in violation of state tort law and the Federal Tort Claims Act, and a state law claim for intentional infliction of emotional distress. He also contends that defendants Lieutenant

---

[2] Pagan also alleges that it is a practice and custom at the Connecticut Department of Correction ("DOC") to punish and harass inmates convicted of sexual assault by, among other things, telling other inmates of such a convicted person's charges and then doing nothing to interrupt the inevitable harassment and mistreatment that follows. Pagan makes these allegations in only conclusory fashion and does not provide any factual basis for them. Accordingly, the Court does not further address this aspect of his claim.

Therian, Captain Colon, Warden Guadelarama, Counselor Suarez and Does 1–3 were deliberately indifferent to his safety in violation of Article first, §§ 8 and 9 of the Connecticut Constitution by returning him to an unsafe environment after his discharge from the hospital.

**Deliberate Indifference to Safety / Failure to Protect**

Pagan contends that the correctional staff defendants were deliberately indifferent to his safety because they did not take steps to protect him from harm from inmate defendants Smith, St. Pierre, and Bozzett when they knew he was being harassed because of his criminal charges. Prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), and in particular, "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833.

The Supreme Court has established a two-part test to determine whether failure to protect a prisoner rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the prison official must have acted with a "sufficiently culpable state of mind," *id.*, that is, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 298–303 (1991) (explaining deliberate indifference standard as applied to prison conditions cases).

Under the first component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone*

6

unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Physical and sexual assault of a prisoner clearly falls within this category.

However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A claim that a correctional officer failed to protect an inmate from attack rises to the level of a constitutional violation only when the officer acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828. Deliberate indifference is "the equivalent of criminal recklessness." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Negligent conduct is insufficient. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent") (citing *Farme*r, 511 U.S. at 835–37).

In instances of inmate-on-inmate assault, courts have found a valid Eighth Amendment claim where the prisoner alleges that he informed correctional officials about a specific fear of assault prior to being assaulted. The information provided to correctional officials, however, must be sufficiently detailed so as to establish that the correctional officials were sufficiently aware of the risk of harm at issue. For example, in *Morgan v. Dzurenda*, the Second Circuit found that detailed and specific verbal and written reports to correctional officials identifying the inmate making the threat, describing the threats, and the underlying reasons was sufficient to put the officials receiving the report on notice of a substantial risk of harm. 956 F.3d 84, 90 (2d Cir. 2020). However, a report to a correctional officer indicating only that another inmate had threatened the plaintiff-inmate and he feared for his safety, lacked sufficient detail to put the officer on notice of

a substantial risk of harm. *Id.* at 88, 90; *see also Figueroa v. Semple*, No. 3:12-CV-982(VAB), 2015 WL 3444319, at *5 (D. Conn. May 28, 2015) (granting summary judgment on failure to protect claim where plaintiff presented no evidence that he told defendant he feared attack from assailant and no evidence that defendant drew that inference) (citing cases).

The court does not consider a deliberate indifference to safety claim with the benefit of hindsight. Rather, the court considers the "facts and circumstances of which the officer was aware at the time [the officer] acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010). Pagan alleges that correctional staff are trained that inmates convicted of sexual assault on a minor are subject to a greater risk of assault by other inmates and that the correctional staff defendants were aware of his criminal charges. He also alleges that defendants Does 1–3, Captain Colon, and Counselor Suarez witnessed the harassment and threats from the other inmates, including defendants Smith, St. Pierre, and Bozzett prior to the assault which landed Pagan in the hospital. Pagan concedes, however, that he did not initially report the first two incidents. He first reported them to defendant Lieutenant Therian on the way to the hospital after the December 28, 2019 assault. Pagan also alleges that upon release from the hospital, he was returned to the same housing unit. It is not clear what role defendants Does 1–3, Captain Colon, and Counselor Suarez had in the decision to return Pagan to the same unit. But the severity of the assault, coupled with the by-then disclosed two previous assaults supports an inference that the correctional staff defendants were aware of a substantial risk of harm to Pagan. At this juncture, the Court will permit the case to proceed against these correctional staff defendants for further development of the record on the claims of deliberate indifference to safety with respect to all four assaults. *See Hartry*, 755 F. Supp. 2d at 438 (rejecting summary judgment where defendant knew

plaintiff was cooperating witness, was aware of threats when other inmates discovered this fact and risks facing informants in general). As defendant Lieutenant Therian is alleged to be involved only after the third assault, the deliberate indifference to safety claim will proceed against him only as to decision to return Pagan to the housing unit prior to the fourth assault.

**Defendants Guadelarama and Suess**

Defendants Warden Guadelarama and Lieutenant Suess are supervisory officials. The Second Circuit has recently clarified the standard to be applied to claims of supervisory liability. *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). Prior to the Supreme Court's decision in *Iqbal*, 556 U.S. 662, the Second Circuit had identified five categories of conduct that could establish liability of supervisors for the conduct of a subordinate in a § 1983 action, one of which was the creation of "a policy or custom under which unconstitutional practices occurred." *Tangreti*, 983 F.3d at 616. In *Iqbal*, the Supreme Court rejected a theory of supervisory liability that permitted a supervisory to be "held liable based on a lesser showing of culpability than the constitutional violation requires." *Id.* at 617 (referencing *Iqbal,* 556 U.S. at 677). In *Tangreti*, the Second Circuit adopted this view and held that, "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

Pagan does not allege that either defendants Warden Guadelarama or Lieutenant Suess were present when he was threatened and harassed and he does not allege that he informed either defendant of his safety concerns. Nor does he allege any facts suggesting that either defendant ordered him returned to the J-1 housing unit. As the Second Circuit has recently noted, "[a]lthough

9

we afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 120 (2d Cir. 2021) (internal quotation mark omitted).

The claims against defendants Warden Guadelarama and Lieutenant Suess are dismissed.

**Lost Property**

Pagan alleges that defendant Officer Hawes deliberately categorized much of his personal property as contraband and refused to return the property to him in violation of his rights under the Fourteenth Amendment of the United States Constitution. A prisoner can state a due process claim for the loss of property "only if the [s]tate provides no adequate post-deprivation remedy." *Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Connecticut provides a remedy for individuals claiming unauthorized deprivations of property by state officers. *See, e.g., Sherman v. Corcella*, No. 3:19-cv-1889(CSH), 2020 WL 4043178, at *17 (D. Conn. July 16, 2020) (referencing administrative remedy pursuant to DOC Administrative Directive 9.6(16)(B)[3] and claim pursuant to Conn. Gen. Stat. § 4-141, *et seq*.); *see also*, *e.g.*, *Longmoor v. Nilsen*, 329 F. Supp. 2d 289, 302 (D. Conn. 2004) (referencing, *inter alia*, claim pursuant to Conn. Gen. Stat. § 4-141, *et seq*.). Under Conn. Gen. Stat. § 4-141, *et seq*., "a prisoner may bring a claim against the Connecticut Claims Commission unless there is another administrative remedy for [the prisoner's] claim." *Sherman*, 2020 WL 4043178, at *17. The Second Circuit has found that Connecticut has adequate post-deprivation remedies for lost

---

[3] DOC Administrative Directive 9.6 has since been amended. The remedy for property claims appears at DOC Administrative Directive 9.6(9)(B), *See* Department of Correction, *Administrative Directive Chapter 9 Classification* (Apr. 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-9.

property. *See Riddick v. Semple*, 731 F. App'x 11, 13–14 (2d Cir. 2018) (referencing administrative remedy pursuant to DOC Administrative Directive 9.6(16)(B), claim pursuant to Conn. Gen. Stat. § 4-141, *et seq*. and common law intentional tort claim against individual employees). Accordingly, the due process claim against defendant Officer Hawes based on the loss of Pagan's property is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Retaliation**

Pagan also characterizes defendant Officer Hawes actions as retaliation for pressing criminal charges against inmate Smith. To state a cognizable retaliation claim under the First Amendment of the United States Constitution, Pagan must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018). With respect to the second element, the adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93–94 (finding cognizable retaliation claim where adverse action would deter prisoner of ordinary firmness from vindicating his or her constitutional rights). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001). Courts consider the circumstances of the particular case when evaluating the second element. *See id.* (finding that definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. . . . Prisoners may be required to tolerate more than public employees . . . before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)). A prisoner pursuing a retaliation claim

11

may not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).

Pagan alleges that defendant Officer Hawes' deprived him of his property because he sought to press charges against inmate Smith. Asserting a criminal complaint is protected activity. *See Doe v. City of New York*, No. 18-cv-670(ARR)(JO), 2018 WL 3824133, at *12 (E.D.N.Y. Aug. 9, 2018) (finding plaintiff's statement that "she wished to press charges" was "First-Amendment-protected speech"). In response, defendant Officer Hawes confiscated Pagan's property. "A prison official's conduct in confiscating, losing, or destroying an inmate's property may constitute an adverse action for purposes of a retaliation claim." *Marino v. Watts*, No. 9:12-CV-801(NAM/RFT), 2014 WL 1794588, at *6 (N.D.N.Y. May 6, 2014). Finally, Pagan satisfies the final, causal element through his allegation that defendant Officer Hawes stated that he did not like inmates who sexually assaulted minors and who pressed charges against black inmates. Thus, Pagan has plausibly stated a retaliation claim against defendant Officer Hawes.

### Official Capacity

Although Pagan names all the correctional staff defendants in their individual and official capacities, he seeks only damages. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Nor does Pagan allege facts suggesting that the state has waived it. Thus, all requests for damages from the correctional staff defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2) as seeking relief from persons immune from that relief.

**Federal Tort Claims Act**

Pagan contends that the three inmate defendants, Smith, St. Pierre, and Bozzett violated his rights under the Federal Tort Claims Act. The Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) provides the exclusive remedy for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Defendants Smith, St. Pierre, and Bozzett are state prisoners. They are not federal employees. Thus, their actions are not cognizable under the Federal Tort Claims Act.

**State Law Claims**

Pagan includes many state-law claims. He asserts claims for the torts of sexual assault and battery against the three inmate defendants, a claim for intentional infliction of emotional distress against inmate defendants St. Pierre and Bozzett, and claims for violation of Article first, §§ 1, 4, 5, 8, 9, 10, 11, 14, and 20 of the Connecticut Constitution against the correctional staff defendants. The Court declines to exercise supplemental jurisdiction over any of the state law claims.

The federal court's supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction can exist only where the state and federal claims share a "common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "[A] sufficient relationship will be found if

the facts pertinent to the federal and state claims substantially overlap or if 'presentation of the federal claim necessarily [would bring] the facts underlying the state claim before the court.'" *BLT Restaurant Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 10 (2d Cir. 2012) (quoting *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 704).

Pagan's state constitutional claims against the correctional staff defendants arise from the same facts as his federal claims against them. It is not an obvious conclusion however, that his state tort claims against the inmates arise from a common nucleus of operative facts for purposes of §1367(a). But because the evidence with respect to the tort claims—proof of the assaults—will be part of the trial of the federal claims, it is also not obvious that the Court does not have supplemental jurisdiction over these claims.

Regardless, under § 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Additionally, a district court should not decline to exercise supplemental jurisdiction under § 1367(c) unless it also determines that to exercise such jurisdiction would not promote "economy, convenience, fairness, and comity." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).

Pagan alleges violations of Article first, §§ 1, 4, 5, 8, 9, 10, 11, 14, and 20 of the Connecticut Constitution. However, the Connecticut Supreme Court has not recognized a private right of action for Connecticut prisoners under any of these provisions. *See, e.g., St. Louis v. Wu*,

No. 3:19-cv-320(KAD), 2019 WL 2357566, at *7 (D. Conn. June 4, 2019) (Connecticut courts have repeatedly declined to recognize private right of action under Article first, §§ 1 and 20 of Connecticut Constitution) (citing cases); *see also, e.g., Lopez v. Smiley*, 375 F. Supp. 2d 19, 23–25 (D. Conn. 2005) (declining to recognize private right of action under various provisions of Connecticut Constitution, including Article first, §§ 4, 5, 7, 8, 9, 10, 14, and deferring to state courts to recognize such cause of action in first instance); *see also, e.g., Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *5–7 n.4 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize prisoner's claim for money damages and injunctive relief brought under Article first, §§ 1, 4, 8, 9, 14, and 20 of the Connecticut Constitution in the absence of direction from the Connecticut Supreme Court). The only case recognizing a private right of action for loss of personal property under Article first, § 11 of the Connecticut Constitution, deals with business property lost when the building in which the property was located was condemned and destroyed. *See Kendrick v. Town of Winchester/City of Winsted*, 11 F. Supp. 2d 212, 214, 218 (D. Conn. 1998) (denying motion to dismiss cause of action under Article first, § 11 of the Connecticut Constitution for taking of property). As the state courts have not recognized a private right of action for Connecticut prisoners under any of the state constitutional provisions, the Court declines to exercise supplemental jurisdiction over the Article first, §§ 1, 4, 5, 8, 9, 10, 11, 14, and 20 of the Connecticut Constitution claims as they involve novel issues of state law. *See Binette v. Sabo*, 244 Conn. 23, 48, 710 A.2d 688 (1998) (explaining that decision to recognize causes of action for state constitutional provisions would be made on case-by-case basis after "multifactor analysis").

Pagan's state tort claims require him to establish facts regarding the conduct and intent of the inmates vis-à-vis Pagan at the time of the incidents. "The elements of the intentional tort of

sexual assault, are: (1) harmful or offensive contact with a person; (2) intended to cause the person

such contact; and (3) that results from an act." *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 552

(D. Conn. 2006), *aff'd sub nom., Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008). "A civil

battery requires: (1) that the defendant intended to cause a harmful of offensive contact, or an

imminent apprehension of such contact, with another person, and (2) that a harmful contact directly

or indirectly results." *Id.*. "A civil assault requires: (1) that the defendant intended to cause a

harmful or offensive contact, or an imminent apprehension of such contact, with another person,

and (2) that the other person was put in imminent apprehension as a result." *Id.*. To state a claim

for intentional infliction of emotional distress, Pagan must establish: "(1) that the actor intended

to inflict emotional distress or that he knew of should have known that emotional distress was the

likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the

defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress

sustained by the plaintiff was severe." *Appleton v. Board of Educ. of Stonington*, 254 Conn. 205,

210, 757 A.2d 1059 (2000).

As discussed above, the federal claims, however, focus on what the correctional staff

defendants knew and understood regarding a risk to Pagan's safety posed by other inmates. As

these are two distinct inquiries, involving overlapping but largely disparate evidence, the Court

concludes that exercise of supplemental jurisdiction over the state tort claims would not promote

the values of judicial economy, convenience, fairness, and comity. The state tort claims are

dismissed without prejudice.

**Orders**

The claim for lost property, the Federal Tort Claims Act claims, all official capacity claims,

and all claims against defendants Warden Guadelarama and Lieutenant Suess are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The Court declines to exercise supplemental jurisdiction over any state law claims. The case will proceed on the Eighth Amendment claims for deliberate indifference to safety against defendants Captain Colon, Counselor Suarez, Doe 1, Doe 2, and Doe 3 in their individual capacities as specified above, and the retaliation claim against defendant Officer Hawes in his individual capacity.

The court enters the following additional orders.

(1)     As Pagan paid the filing fee to commence this action, he is directed to effect service of the Complaint and this Order on correctional staff defendants Captain Colon, Counselor Suarez, and Officer Hawes in their individual capacities in accordance with Fed. R. Civ. P. 4 and file a return of service within ninety (90) days of the date of this order. Failure to do so will result in the dismissal of this action. Pagan shall file a notice indicating the date on which he mailed the notice of lawsuit and waiver of service of summons forms to the correctional staff defendants and shall file the waiver of service of summons forms when he receives them. If any correctional staff defendant fails to return a signed waiver of service of summons form, Pagan shall arrange for in-person service on the correctional staff defendant in accordance with Fed. R. Civ. P. 4.

(2)     **The Clerk shall** send Pagan a copy of this Order, instructions on effecting service and notice of lawsuit forms and waiver of service of summons forms.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an

answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Fed. R. Civ. P. 26 through 37, shall be completed by **September 16, 2022.** Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by **October 16, 2022.**

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the Pagan changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Pagan must give notice of a new address even if he is incarcerated. Pagan should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Pagan has more than one pending case, he should indicate all the case numbers in the notification of change of address. Pagan should also notify the attorney for the defendants of his new address. **FAILURE TO NOTIFY THE COURT OF A CHANGE OF ADDRESS MAY RESULT IN DISMISSAL OF THIS CASE.**

(9)     Pagan shall utilize the Prisoner E-Filing Program when filing documents with the court. Pagan is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)    **The Clerk shall** immediately enter the District of Connecticut Standing Order Re:

18

Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Pagan.

(11)   The case cannot proceed against correctional staff defendants Doe 1, Doe 2, and Doe 3, without their full names. Pagan is directed to provide this information to the Court within sixty (60) days from the date of this Order. Upon receipt, the Clerk shall send additional notice of lawsuit forms and waiver of service of summons forms to Pagan and Pagan shall effect service on these correctional staff defendants within ninety (90) days from the date of this order. Failure to do so will result in the dismissal of the claims against any correctional staff defendant who has not been identified and served.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of February 2022.

  */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

19